IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SKYWAY TOWERS LLC and F.A. McCOMAS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> THE CITY OF SAN ANTONIO and THE CITY OF SAN ANTONIO CITY COUNCIL, <br><br> Defendants. | CV. NO. 5:14-CA-410-DAE |

ORDER GRANTING CITY COUNCIL'S MOTION TO DISMISS

On July 9, 2014, the Court held a hearing on the Motion to Dismiss ("Motion") filed by Defendant City of San Antonio City Council (the "City Council").[1] ("Mot.," Dkt. # 10.) Scott Thompson, Esq., and William Francis III, Esq., represented Plaintiffs Skyway Towers LLC and F.A. McComas, Inc.; Shawn Fitzpatrick, Esq. represented Defendant City of San Antonio City Council. After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** the City Council's Motion.

---

[1] This motion in no way concerns the City of San Antonio itself.

1

BACKGROUND

A.     Factual History

Skyway Towers LLC ("Skyway") constructs, owns, and manages wireless communication towers that allow wireless carriers to create and maintain a network of "cell sites," designed to send and receive radio signals. ("Compl.," Dkt. # 1 ¶ 10.) If Skyway is unable to construct a cell site within a given area, the wireless carriers it serves will not be able to provide service to consumers within that area. (Id. ¶ 11.)

Three wireless carriers, AT&T, T-Mobile, and Verizon, and their separate engineering departments, found significant gaps in service coverage within San Antonio. (Id. ¶¶ 13–14.) AT&T provided Skyway with a search area established by its engineers, and requested that Skyway develop a wireless communications facility within that search area so that it may remedy its gap in coverage. (Id. ¶ 15.)

Skyway then sought suitable properties within the search area that were appropriate for a wireless communications facility. (Id. ¶ 16.) After evaluating properties within the search area, Skyway found that the property located at 14440 Huebner Road (the "Site") was suitable for constructing and maintaining a wireless communications facility. (Id. ¶ 17.)

The Site, owned by Plaintiff F.A. McComas, Inc. ("McComas") is

zoned for commercial use.  (Id. ¶ 20.)  However, because the Site is located in the Edwards Recharge Zone District, it is subject to the Edwards Aquifer Protection Standards (chapter 34, article VI, division 6 of the San Antonio City Code) and requires Specific Use authorization by the City of San Antonio Water System ("SAWS").  (Id.)  Again, because the Site is located in the Edwards Recharge Zone District, any development on the Site also requires review and approval by the Texas Commission on Environmental Quality ("TCEQ").  (Id. ¶ 20.)

In February 2013, at Skyway's request, McComas filed an Application for the Specific Use Permit (the "Application").  (Id. ¶ 23.)  The City of San Antonio construed the Application as a request for a "zoning change."  (Id.)  Pursuant to the Edwards Aquifer Protection Standards, the Application was referred to the SAWS for review and recommendation.  (Id. ¶ 25.)  On March 18, 2013, SAWS recommended approval of the Application, subject to compliance with particular recommendations designed to address the environmental concerns posed by development of the Site.  (Id. ¶ 26.)  On May 28, 2013, TCEQ approved Skyway's Modification of an Approved Water Pollution Abatement Plan, providing state authorization for the proposed wireless facility.  (Id. ¶ 27.)

On April 16, 2013, the application was presented to the City Zoning Commission.  (Id. ¶ 28.)  The Zoning Commission delayed its decision on the Application until December 17, 2013 to allow Skyway to continue their meetings

with the Hunter's Creek North neighborhood, which objected to the proposed 150 foot tall monopole wireless communications tower.[2] (Id. ¶¶ 28–31.) On December 17, 2013, the City's Zoning Commission recommended approval of the Application. (Id. ¶¶ 28–31, 44.)

Despite the recommendation, upon the request of City Councilman Nirenberg, Skyway investigated other potential locations for the proposed wireless communications tower. (Id. ¶¶ 45–47.) Skyway contacted the owners of the only two other properties within the search area that met the zoning and building requirements. (Id. ¶ 47.) Both owners responded that they were not willing to allow Skyway to construct a communications tower on their property. (Id.)

On April 3, 2014, Skyway and McComas presented the Application to the City Council. (Id. ¶ 48.) They presented evidence that the proposed wireless communications tower complied with City Code requirements, that the Site was the only feasible site, and that the Zoning Commission, SAWS, and TCEQ recommended approval. (Id. ¶¶ 50–55.) At the April 3, 2014 City Council meeting, two community members, one of whom stated that he represented the Hunter's Creek North Neighborhood Association, spoke in general opposition to the Application. (Id. ¶ 56.)

---

[2] Pursuant to negotiations between Plaintiffs Skyway and McComas and the Hunter's Creek North Neighborhood, Plaintiffs agreed to deed restrictions limiting the Site to only one tower of 150 feet, and changing the proposed tower to a "stealth flagless flagpole." (Compl. ¶¶ 38–42.)

4

According to Skyway and McComas, "the City Council did not discuss any of the evidence presented on the Application and did not discuss any potential grounds for denial, beyond the mere statement that the neighborhood was opposed." (Id. ¶ 70.)

After the close of public comment on the Application, Councilman Nirenberg stated that he disagreed with the recommendations of the Zoning Commission, the Zoning Staff, the SAWS, and TCEQ. (Id. ¶ 57.) Councilman Nirenberg moved to deny the Application, stating that some of the neighborhoods in the vicinity of the site were opposed to any wireless communications tower in the area. (Id.) Councilman Gallagher seconded Councilman Nirenberg's motion to deny the Application. (Id. ¶ 58.) Councilman Gallagher stated that he based his decision on the general opposition of the surrounding neighborhood. (Id.)

The City Council subsequently voted to deny the Application. (Id. ¶ 71.) The City Council did not issue any written documentation of its denial of the Application or the reasons for the denial. (Id. ¶¶ 72–73.)

B.  Procedural History

On May 2, 2014, Plaintiffs Skyway and McComas filed a Complaint for Declaratory and Injunctive Relief and Expedited Treatment against Defendants. (Id. at 1.) Plaintiffs brought three causes of action against the City of San Antonio and the City Council under the Communication Act's Mobile Services

5

Provision, 47 U.S.C. § 332(c)(7).  (Id. ¶¶ 78–105.)  Plaintiffs contend that Defendants (1) failed to issue a written decision (id. ¶¶ 78–85), (2) failed to support the decision with substantial evidence (id. ¶¶ 86–96), and (3) caused an effective prohibition of personal wireless service (id. ¶¶ 96–105).

On May 30, 2014, Defendants filed an Answer.[3]  (Dkt. # 9.)  On June 4, 2014, the City Council filed the instant Motion to Dismiss.[4]  (Mot.)   (Id.)  On June 20, 2014, Plaintiffs filed an Opposition to the City Council's Motion to Dismiss.  ("Resp.," Dkt. # 13.)

## LEGAL STANDARD

The City Council relies on Federal Rule of Civil Procedure 12(b)(6) in support of its Motion to Dismiss.  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d

---

[3] In their Answer, Defendants moved to dismiss the City Council as a party in the action.  (See Dkt. # 9 ¶ 3.)  However, the Court requested that Defendants file the Answer and Motion to Dismiss separately.

464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted).

In Iqbal, the Supreme Court established a two-step approach for assessing whether a complaint has sufficient facial plausibility to survive a Rule 12(b)(6) motion. First, a reviewing court must identify all of the conclusory allegations and disregard them, for they are "not entitled to an assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).

Second, a reviewing court must "consider the factual allegations [in the complaint] to determine if they plausibly suggest an entitlement to relief." Iqbal, 556 U.S. at 680. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'shown'—that the pleader is entitled to relief.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 677). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

## DISCUSSION

The City Council presents three arguments in support of its motion for dismissal. First, it contends that Plaintiffs' Complaint does not seek relief from, or against, the City Council. (Mot. ¶ 5.) Second, it argues that Plaintiffs' causes of action under § 332(c)(7)(B)(iii) are invalid against the City and, presumably, the City Council, because "the City's zoning decisions are regulatory, legislative decisions rather than adjudicative decisions." (Id. ¶ 2.) Third, and most importantly, it asserts that it is not a jural entity capable of being sued under state

and municipal law.  (Id. ¶¶ 6–7.)[5]

I.      Plaintiffs' Complaint Seeks Relief From the City Council

The City Council first contends that Plaintiffs' claims against them must be dismissed because Plaintiffs do not seek relief from, or against, the City Council.  (Mot. ¶ 5.)  Pursuant to Rule 12(b)(6), dismissal of a defendant against whom the plaintiff fails to seek damages or other relief is appropriate.  See Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am., 439 F. App'x 359, 367 (5th Cir. 2011).  However, as Plaintiffs correctly note in their Opposition to the Motion, Plaintiffs establish that the Complaint refers to the City of San Antonio and the City Council collectively as "the City."  (Resp. at 3; Compl. at 1.)  Therefore, the allegations and causes of action against "the City" refer to both the City and the City Council.  Accordingly, dismissal of the claims against the City Council on this ground is not appropriate and is denied.

II.     Whether § 332(c)(7)(B) Applies to the City Council's Action

The City Council next argues that Plaintiffs' § 332(c)(7)(B)(iii) cause of action does not apply to it because its zoning decisions are regulatory,

---

[5] The City Council also cites its Answer (Dkt. # 9), arguing that "Plaintiffs' use of 47 U.S.C. § 332(c)(7)(B) violates the US Constitution and that the statute itself is unconstitutional if it can be used to compel the City Council to legislate, or to legislate in a certain way."  (Mot. ¶ 9.)  However, the City Council concedes that this argument is "the proper subject of a motion for summary judgment, or trial, and is not asserted in this motion."  (Id.)  Therefore, the Court will not address this argument.

legislative actions rather than adjudicative decisions and § 332(c)(7)(B)(iii) applies only to adjudicative decisions.  (Mot. ¶ 2.)  However, this is a substantive argument that the Court need not reach for the reasons specified infra.  Instead, this argument better suited in the context of a motion for summary judgment.

III.	The City Council, as the Governing Body of the City, May Not be Sued

The City Council next contends that the Plaintiffs' claims against it should be dismissed because it is not a jural entity capable of suing or being sued.  (Mot. ¶ 6.)  The City Council maintains that the City of San Antonio is the only proper party to defend against Plaintiffs' claims.

The capacity of a governmental entity to sue or be sued in federal court is determined by state law.  See Fed. R. Civ. P. 17(b); Wright, Miller, & Kane, 6A Federal Practice and Procedure: Civil 2d § 1562 (2d ed. 1990).  Under Texas law, a city is "allowed to designate whether one of its own subdivisions can be sued as an independent entity."  Darby v. Pasadena Police Dep't, 939 F.2d 311, 313 (5th Cir. 1991); accord Motel 6 Operating, L.P. v. Gaston Cnty., N.C., 3:08-CV-00390-FDW, 2009 WL 1940499 (W.D.N.C. July 2, 2009) ("Political subdivisions of a state or local government have capacity only if the law creating them recognizes them as separate legal entities having capacity to sue or be sued." (citing 4 James Wm. Moore et al., Moore's Federal Practice ¶ 17.26 (3d ed. 2009))).  This designation is found in the instrument that conferred authority to the

subdivision. Wright, Miller, & Kane, 6A Federal Practice and Procedure: Civil 2d § 1562 ("[A] governmental corporation . . . is a separate entity and its capacity to sue and be sued is determined in the same way as is the capacity of a private corporation under Rule 17(b)—by the law under which it was organized.").

The subdivision must "enjoy a separate legal existence" meaning that it must be a "separate and distinct corporate entity." Darby, 939 F.2d at 313 (quoting Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)); see also Kirby Lumber Corp. v. State of La. through Anacoco-Prairie State Game and Fish Comm'n, 293 F.2d 82, 83 (5th Cir. 1961) (holding that a political subdivision cannot pursue a suit on its own unless it is "a separate and distinct corporate entity"). As a result, unless a city has taken explicit steps in the instrument to grant jural authority to the subdivision, the subdivision cannot engage in any litigation except in concert with the city itself. Darby, 939 F.2d at 313 (citing Kirby Lumber Corp., 293 F.2d at 83; Taylor v. Adm'r of Small Bus. Admin., 722 F.2d 105, 107 (5th Cir. 1983)); see also Thomas-Melton v. Dall. Cnty. Sheriff's Dep't, 39 F.3d 320 (5th Cir. 1994) (indicating that even if the county were added as a defendant, the plaintiff would still need to show that a county subdivision was an entity amenable to suit in order to engage in litigation in concert with the government).

To illustrate, in Darby, the Fifth Circuit found that the Pasadena Police Department was not a separate and distinct corporate entity from the City of

11

Pasadena, Texas because the City did not expressly grant "its police department the capacity to engage in separate litigation." 939 F.2d at 315.  As such, the Pasadena Police Department was not a legal entity distinguishable from the City and therefore could not be sued separately.  Id.  Similarly, in Avery v. Burke County, the Fourth Circuit held that neither the North Carolina Board of Health nor the Board of Social Services were legal entities separate and apart from Burke County because "[b]oth boards [were] created by, and [were] extensions of, the county." 660 F.2d 111, 114 (4th Cir. 1981) (citing N.C. Gen. Stat. §§ 108-7 and 130-13).

In support of their argument that the City Council is a separate jural entity, Plaintiffs appropriately cite to the San Antonio City Charter.  See Wright, Miller, & Kane, 6A Federal Practice and Procedure: Civil 2d § 1562 (noting that a subdivision's jural authority derives from the instrument that conferred authority to the subdivision).  Plaintiffs first cite San Antonio City Charter Art. I, Section 3, Paragraph 1, which confers the power to sue and to be sued to the City of San Antonio.  Then, Plaintiffs cite Article II, Section 4, which states: "Subject to the provisions of [the] Charter, the [City] Council shall have and exercise all powers now or hereafter conferred on the City."  Combining these two provisions, Plaintiffs contend that "by granting the City the power to sue and be sued and then granting the City Council all powers conferred on the City, the City Charter does explicitly grant the City Council the power to sue and be sued." (Resp. at 5.)

However, Plaintiffs' reliance on the Charter conferring general powers of the City to the City Council does not imply that the City conferred <u>jural authority</u> to the City Council. As stated in <u>Darby</u>, the entity must be expressly granted the ability to engage in <u>separate litigation</u> from the City. 939 F.2d at 315. Here, the Charter does not expressly grant the City Council with the authority to engage <u>in litigation</u> independently of the City. The City Council's powers, including the power to sue and be sued, are only conferred upon it through its role as the governing body of the City. The Charter does not explicitly state that the City Council has the power to sue and be sued as a separate jural entity from the City.

Moreover, even crediting Plaintiffs' reading of the Charter, the City Council is not a "separate <u>entity</u>" apart from the City. See <u>Darby</u>, 939 F.2d at 313 ("In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence.'"). By granting the City Council all of the powers of the City and establishing it as the City's governing body, it is clear that the City Council is not separate from the City. Rather, the City Council exclusively acts on behalf of the City. See <u>Johnson v. Hurtt</u>, 893 F. Supp. 2d 817, 826 (S.D. Tex. 2012) (finding that the Houston Police Department did not enjoy a separate legal existence apart from the City as "merely an arm of the City because its creation and functions are dependent on the will of the City's governing body"). There is no provision in the

13

City Charter that allows or grants the City Council the power to function independently of, or as a separate government unit, from the City.  See U.L. Coleman Co., Ltd. v. Bossier City-Parish Metro. Planning Comm'n, CIV. A. 08-2011, 2009 WL 3518173, at *2 (W.D. La. Oct. 29, 2009) (finding that the Office of Permits was not a separate legal entity from the city because there were no provisions in the city charter "allowing or otherwise granting the Office of Permits the power to function independently of, or as a separate government unit, from the City").

Plaintiffs have failed to show that the City Council enjoys a separate legal existence from the City.  The City Council cannot be sued independently from the City and thus the City Council should be dismissed from Plaintiffs' action.

IV.   City Council is Not a Required Defendant

Despite finding that the City Council cannot be sued because it is not a separate jural entity, the Court writes separately to address Plaintiffs' concern that the relief they seek can only be obtained from the City by an act of the City Council.  (Id.)  To support this argument, Plaintiffs cite various cases indicating that the proper remedy for a violation of § 332(c)(7) is an order requiring that the local authority grant all necessary permits and applications to allow the approval and construction of the denied wireless communications tower.  (Id. at 3–4 (citing

14

Preferred Sites, LLC v. Troup Cnty., 296 F.3d 1210, 1222 (11th Cir. 2002) (holding that "an injunction ordering issuance of a permit is an appropriate remedy for violation of [the Act]"); Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117, 120–22 (1st Cir. 2001); Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Tp., 181 F.3d 403, 409–10 (3d Cir. 1999); Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 497 (2d Cir. 1999)).)

However, the Court is not persuaded that the City Council is a required defendant. Upon review of Plaintiffs' cited cases, only Cellular Tel. Co. includes both a town and the town board, but that case did not specifically require the town board as a party. See 166 F.3d at 497. In fact, the court held that the "Town"—not the "Town Board" specifically—was required to issue the permits. Id. Similarly, despite Preferred Sites, LLC holding that the remedy for a § 332(c)(7) violation is the issuance of a permit, that case does not even include a city council or similar subsidiary body as a defendant. See 296 F.3d at 1210. Therefore, the Court fails to see how these cases demonstrate that the City Council is necessary for Plaintiffs to acquire their injunctive remedy. Plaintiffs can seek the same remedy against the City itself without the City Council remaining a party defendant.[6]

---

[6] In fact, the City Council's attorney admitted as such at the July 11, 2014 hearing.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City Council's Motion to Dismiss (Dkt. # 10).  However, as noted above, the City of San Antonio is still a party Defendant to this action.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 14, 2014.

_____
David Alan Ezra
Senior United States Distict Judge